CRONIN v MINSTER PRESS

1. STATUTES—CONSTRUCTION OF STATUTES—LEGISLATIVE INTENT.

The primary rule of construction of a statute is to ascertain and give effect to the intention of the Legislature.

2. STATUTES—CONSTRUCTION OF STATUTES—EQUITABLE CONSIDERATION.

It is the duty of the court to construe a statute without reference to equitable considerations.

3. LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—PURPOSES.

Statutes of limitation in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared; the theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims comes, in time, to prevail over the right to prosecute them.

4. LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—TOLLING STATUTE—STATUTES—ACTIONS IN FOREIGN COURTS.

The statutes of limitation are tolled when jurisdiction is obtained over a defendant, whether in a Michigan court or a foreign court, since the defendant will receive notification of an impending suit in either case (MCLA 600.5856[2]).

5. LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—ESTOPPEL—ATTORNEY AND CLIENT—DUAL REPRESENTATION.

A defendant is estopped from pleading the statute of limitations where the plaintiffs' failure to act or their inability to act effectively is attributable to the conduct of defendant's attorneys, who initially represented both the plaintiff and the defendant.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Statutes §§ 145, 146.
[3] 73 Am Jur 2d, Statutes § 160.
[4] 51 Am Jur 2d, Limitation of Actions §§ 138–199.
[5] 51 Am Jur 2d, Limitation of Actions § 423.

Appeal from Berrien, William S. White, J. Submitted Division 3 October 9, 1974, at Grand Rapids. (Docket No. 18995.) Decided November 7, 1974. Leave to appeal denied, 393 Mich —.

Complaint by Danny L. Cronin and Shirley L. Cronin against Minster Press, a foreign corporation, for damages for injuries sustained when operating a punch press. Defendant's motion for accelerated judgment denied. Defendant appeals on leave granted. Affirmed.

*Philo, Maki, Cockrel, Robb, Spearman & Cooper,* for plaintiffs.

*Cholette, Perkins & Buchanan,* for defendant.

Before: ALLEN, P. J., and J. H. GILLIS and McGREGOR, JJ.

McGREGOR, J. This is an interlocutory appeal. Plaintiffs began legal proceedings against the defendant in the United States District Court for the Northern Division of Ohio, Western District, alleging that plaintiff Danny Cronin was injured as a result of the negligence of defendant. Plaintiff claims that he was injured on June 5, 1969, while operating a punch press in Michigan which had been manufactured by the defendant in Ohio. The cause of action in Ohio was instituted on May 31, 1972, in Federal court, slightly less than three years after the alleged incident. Defendant was served with process on June 26, 1972.

Although the record of the Federal court is not before this Court, it appears from the parties' briefs that, after taking depositions, defendant

answered the complaint and later moved to dismiss, alleging that the suit was barred by the Ohio two-year statute of limitations. After this motion was filed, plaintiffs initiated suit in Michigan; subsequently an order was entered in Ohio District Court, on June 18, 1973, dismissing the suit there because the suit was not commenced within two years, as required by the applicable Ohio statute of limitations. The Ohio court made no ruling on the merits of the action.

On April 13, 1973, plaintiffs commenced suit in Berrien County circuit court, alleging negligence and strict liability. Defendant moved for accelerated judgment in lieu of an answer, claiming that plaintiffs' action was barred by the Michigan statute of limitations, MCLA 600.5805; MSA 27A.5805. A hearing was held on July 16, 1973, at which time defendant's motion was denied. The trial court agreed to certify the issue of law to this Court, which was stated substantially as follows:

"Did the acquisition of jurisdiction over defendant in an identical lawsuit brought in Federal court in Ohio toll the Michigan statute of limitations as allowed by MCLA 600.5856(2); MSA 27A.5856(2) thus permitting plaintiffs to bring a cause of action over 3 years after an alleged accident was said to have occurred?"

It should be noted that the litigation in the Ohio Federal court remained active for about one year, during which time depositions were taken. More unusual, plaintiff charges in his brief to this appellate court (and previously, before the Michigan circuit court, in the argument on defendant's motion to dismiss) that these plaintiffs were represented by the same attorneys who are now representing the defendants until 90% of the statutory

limitation 3-year period had run.[1] The order of the
trial court, certifying the issue of law to this
Court, was granted on January 30, 1974, and the
claim of appeal was filed on February 13, 1974.

The question is now before this Court.

Plaintiffs raised two procedural objections which
are meritless and should be disposed of immedi-
ately. First, plaintiffs contend that defendant is
not following proper Michigan procedure, since it
argues different issues on appeal than were raised
at the hearing and than were certified to this
Court. This argument has no foundation. The issue
raised below was whether MCLA 600.5856(2) ap-

---

[1] Apparently, this claim is well founded, although the defendant's
attorneys have now denied this allegation.

In response to questions from this Court at oral argument concern-
ing the defense firm's initial handling of plaintiffs' case, the firm
submitted affidavits which reveal the following:

(1) On June 5, 1969, plaintiff claims he was injured while operating
a punch press in Michigan which had been manufactured in Ohio.

(2) Plaintiff contacted an attorney, who referred the case to the
present defense firm in October, 1969.

(3) From October, 1969, to at least March 1, 1971, this firm re-
viewed plaintiffs' case and attempted to identify the potential defend-
ant's insurance carrier. Note that on March 1, 1971, only 3 months
remained on the Ohio statute of limitations and 15 months remained
on the Michigan statute of limitations.

(4) On March 1, 1971, the present defense firm—after learning the
identity of defendant's insurance carrier and realizing that the firm
represented that carrier—forwarded the file to plaintiffs' present
attorney. As stated in the defense firm's supplementary letter, the
case at this time was not actually referred to plaintiffs' present
attorney. Rather, plaintiffs' present attorney retained the right to
investigate the potential claim before reaching his decision whether
to accept or reject the case.

(5) At some time in February, 1972, plaintiffs' present attorney
interviewed and secured a contingent fee from plaintiffs. The exact
date of this acceptance is unknown. Note: This final decision to accept
the case from the present defense firm came over 8 months *after* the
2-year Ohio statute had run, and only 4 months before the running of
the 3-year Michigan statute of limitations.

Since, by their own affidavits, the defense firm has shown that they
held the case until almost 90% of the 3-year Michigan statutory
limitation had run, they are not in a good position to claim lack of
notice or prejudice.

plied to the instant case to toll the Michigan statute of limitations. That was the specific issue decided by the court and then certified to this Court. Both plaintiffs and defendant argued this issue in their memoranda submitted to the trial court before the hearing. Plaintiffs apparently regard arguments on "the equities" of the situation unrelated to statutory construction. It is clear that the trial court looked to the policies and purpose behind the statute of limitations and effected what it believed to be the purpose of this statute. This is clearly an integral part of statutory construction.

The issue before us is one of statutory construction. MCLA 600.5805; MSA 27A.5805 states:

"No person may bring or maintain any action to recover damages for injuries to persons or property unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

* * * [(1)–(6) these sections are inappropriate.]

"(7) The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property."

To this general statute, there are exceptions which toll the operation of the statute during the pendency of specified events. The only provision said to apply in the instant case is MCLA 600.5856(2); MSA 27A.5856(2), which states:

"The statutes of limitations are tolled when * * *

"(2) jurisdiction over the defendant is otherwise acquired * * * ."

The question, therefore, is whether "jurisdiction over the defendant" implies jurisdiction by a Mich-

igan court or jurisdiction by any court, including a
foreign court.

The primary rule of construction is to ascertain
and give effect to the intention of the legislature.
*Psychas v Trans-Canada Highway Express Ltd,*
146 F Supp 11 (ED Mich, 1956); *Aikens v Depart-
ment of Conservation,* 387 Mich 495; 198 NW2d
304 (1972). When, as here, there is no legislative
history and no prior judicial construction, the
courts should make analytical interpretations. If
the meaning of the language is plain and unambi-
guous, interpretation is not necessary, and the
statute is simply applied as written. *Dussia v
Monroe County Employees Retirement System,*
386 Mich 244; 191 NW2d 307 (1971); *Gregory Boat
Co v Detroit,* 37 Mich App 673; 195 NW2d 290
(1972). But where the statute is unclear construc-
tion should be made by the court. *Kizer v Living-
ston County Board of Commissioners,* 38 Mich App
239; 195 NW2d 884 (1972). Statutes should be
construed with an eye toward the result, *Magnu-
son v Kent County Board of Canvassers,* 370 Mich
649; 122 NW2d 808 (1963), and, therefore, a rea-
sonable construction should be given which will
avoid absurd results. *Magreta v Ambassador Steel
Co,* 378 Mich 689; 148 NW2d 767 (1967), *On Re-
hearing,* 380 Mich 513; 158 NW2d 473 (1968). The
court, in other words, is to use common sense in
its construction. *Kalamazoo Township v Kalama-
zoo County Clerk,* 339 Mich 619; 64 NW2d 595
(1954).

It has been said that it is the duty of the court
to construe a statute without reference to equita-
ble considerations. *Mercy Hospital v Crippled Chil-
dren Commission,* 340 Mich 404; 65 NW2d 838
(1954); *Shaw v Lakeway Chemicals, Inc,* 3 Mich
App 257; 142 NW2d 15 (1966); *reversed,* 379 Mich

601; 153 NW2d 653 (1967). However, it is also said that the court should effect the obvious purpose of a statute. *Northville Coach Line, Inc v Detroit,* 379 Mich 317; 150 NW2d 772 (1967); *Ford Motor Co v Village of Wayne,* 358 Mich 653; 101 NW2d 320 (1960).

In the instant case, it is quite clear that the trial court was not weighing equities, but rather was looking to the purpose of the statute of limitations as well as to the exceptions to the statute of limitations, and was attempting to effectuate the purpose.

We are faced here with no legislative history to guide the Court nor any dispositive precedent cases. The only analogous Michigan case is *Ralph Shrader, Inc v Ecclestone Chemical Co, Inc,* 22 Mich App 213; 177 NW2d 241 (1970). In that case, plaintiffs brought a claim in a Michigan Federal court in 1965, alleging an injury in 1963. The case was dismissed in Federal court in 1967 for lack of diversity jurisdiction, and plaintiff then filed in Michigan circuit court. Defendant moved for summary judgment and the trial court ruled the suit barred by the three-year statute of limitations. On appeal, this decision was reversed, the Court of Appeals ruling that the statute was tolled by MCLA 600.5856.

The defendant correctly distinguishes this case. *Shrader, supra,* held that a Federal court, sitting in Michigan, is in effect a Michigan court, that the Legislature would have considered the possibility that such situations would arise, and that no provision being made to the contrary, the exception should apply. This distinction is also true of *Gaines v City of New York,* 215 NY 533; 109 NE 594 (1915), upon which *Shrader* relies, for in that case the court was dealing with two cases in two

New York state courts, the first suit being dismissed for lack of jurisdiction.

Plaintiffs contend that the language and rationale of both cases can be extended to the instant case. Justice Cardozo, in *Gaines, supra,* p 539, first showed a distinct preference for reading the statute of limitations as narrowly as possible to preserve the rights of plaintiffs to bring suit. As he stated:

"The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction, stands on the same plane as any other mistake of law."

The *Shrader* court noted at 217:

"Defendant received timely notice that plaintiff intended to pursue its claim against it under the substantive law of Michigan."

The trial court found that the object of a statute of limitations is to prevent a plaintiff from holding a claim without taking action until it becomes so stale that witnesses forget the facts and the defendant finds the allegations impossible to investigate. Manifestly, this is true. In *Order of Railroad Telegraphers v Railroad Express Agency, Inc,* 321 US 342, 348–349; 64 S Ct 582, 586; 88 L Ed 788, 792 (1944), the Court stated:

"Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the re-

vival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." See also *Atkins v Schmutz Manufacturing Co,* 435 F2d 527, 530 (CA 4, 1970).

The Michigan Legislature set a statutory maximum of three years on tort claims to prevent such hardship, but added the provision that once a court obtains jurisdiction over the action and the summons is placed either in the hands of a summons server or of the defendant, that that action will toll the statute. Thus, the crucial fact found by the trial court was that "the plaintiff gave notice within the [Michigan] statute of limitations and the defendant all that time was gathering their evidence and gathered it from the plaintiff and was not prejudiced in any way by [the] lawsuit".

Plaintiffs assert that they were not negligent and that the action of bringing suit in Ohio, where they thought they could litigate the issue on the merits, gave the defendant his essential notice within the time specified by the Michigan statute. It is impossible to determine plaintiffs' state of mind on this record, but the contention that the Michigan statute should apply no matter where suit was brought has merit, since virtually all contacts (plaintiffs' residence, *locus delicti,* etc.) were in Michigan. As a matter of conflict of laws, there is certainly a viable argument here that, under Ohio law, the Michigan statute of limitations might have applied.

The defendant cites many cases which hold that a "saving statute" such as MCLA 600.5856(2) does

not toll the statute of limitations unless the suit is instituted within the forum state. *Andrew v Bendix Corp,* 452 F2d 961 (CA 6, 1971), *cert denied* 406 US 920, cites many other cases coming to the same conclusion, but supplies no rationale for its decision. This case was recently followed in *Howard v Allen,* 30 Ohio 2d 130; 283 NE2d 167 (1972). *Howard* also cites no rationale, but cites many cases which come to the same conclusion. The same result and the same reasoning are used in *High v Broadnax,* 271 NC 313; 156 SE2d 282 (1967), and *Scurlock Oil Co v Three States Contracting Co,* 272 F2d 169 (CA 5, 1959).

The earliest case appears to be *Herron v Miller,* 96 Okla 59; 220 P 36 (1923), which held that the saving statute of Oklahoma did not apply because statutes of limitations have no extraterritorial effect. Therefore, since the commencement of a suit in one state need not suspend the statute from running in another, the forum state saving clause will not apply to actions commenced in foreign jurisdictions. This was followed without comment in *Estate of Tuckman v Estate of Cottle,* 175 F2d 775 (CA 10, 1949). *Riley v Union Pacific R Co,* 182 F2d 765 (CA 10, 1950), decided shortly thereafter, cited Herron as dispositive of the issue without citing rationale. In the instant case, the appellant has not cited any such clear holding, nor can this Court find such. We agree fully with the trial court and with the plaintiffs. If the reason for the statute of limitations is to protect defendants from the hardship of unearthing evidence long after a cause of action has accrued, if that effect is accomplished by setting an arbitrary deadline within which the plaintiffs must notify defendants of the forthcoming action, if notification is the ultimate goal, and if statutes of limitation are to be read

restrictively, then there is no reason why initiation of any good-faith action on this cause of action should not toll the statute. Certainly, the language of the saving statute is broad enough to cover this interpretation, and the policy behind the statute would seem to encompass it. Defendant's cases seem to be the majority rule, but they also seem to be analytically weak. The rationale of *Herron* that statutes of limitation have no extraterritorial effect is mechanical and nonsensical. The idea, apparently, is that a cause of action begins to run like a clock, until an event stops the clock. *Herron* says that the causes of action in other states cannot stop the clock because they have no extraterritorial effect.

This rationale is misleading. The commencement of a suit in a foreign state has no extraterritorial effect which must be recognized in Michigan because of full faith and credit. But if Michigan public policy is served by noting the occurrence of an event in another state, the Legislature may certainly do so. The public policy behind statutes of limitation has been said to be effected by notification of defendants of an impending suit. Since the defendants will receive notification in either Michigan or foreign suits, the policy is served in either case. Therefore, the broad language of the statute, which is not limited to actions brought only in Michigan, should not be construed to set up illogical distinctions which were not clearly intended.

The delay in instituting suit in this case was largely due to special circumstances unknown to the plaintiffs. Plaintiffs, proceeding in a legal manner to enforce their rights, first retained attorneys who, at that time, represented the defendant's insurance carrier. During these months of "dual"

representation, from the fall of 1969 until March 1, 1971, these attorneys failed to institute suit, and at that time, they selected another attorney for plaintiffs. We hold that the plaintiffs' failure to act or their inability to act effectively is attributable to the conduct of defendant's attorneys, who initially represented both interests and who now represent defendant on appeal. Therefore, the defendant should not be allowed to raise the bar of the statute of limitations.

While, thankfully, the irregular practice of the defendant's attorneys is unique, the practice of applying the doctrine of estoppel to prevent an inequitable resort to a plea of limitations is not.[2]

We hold that, since much of the delay in instituting suit was not the plaintiffs' fault, but the fault of their attorneys who now represent the defendant, the defendant, under the circumstances, is estopped from pleading the statute of limitations.

Affirmed.

All concurred.

---

[2] 51 Am Jur 2d, Limitation of Actions, §§ 431–452, pp 900–914; 43 ALR 3d 429–495; 44 ALR3d 760–779; *Albert v Patterson*, 172 Mich 635; 138 NW 220 (1912); *Cf.* the dissenting opinion of Judge (now Justice) LEVIN in *Conrad v Ward*, 33 Mich App 687, 691–698; 190 NW2d 361 (1971).